THE STATE EX REL. JACKSON, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Jackson v. Indus. Comm.* (1997), 79 Ohio St.3d 266.]

(No. 95–528—Submitted April 15, 1997—Decided July 23, 1997.)

*Cooper, Spector & Weil* and *Gary M. Spector,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Sandra L. Nimrick,* Assistant Attorney General, for appellee Industrial Commission.

*Per Curiam.* This cause presents two issues for our review: (1) Did the commission adequately explain its decision in accordance with *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245? and (2) Is Jackson eligible for PTD under *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666? For the reasons that follow, we hold that the commission failed to sufficiently explain how Jackson's age and prior work experience combined with his education to permit employment, but that Jackson has not established his permanent and total disability. Accordingly, we reverse the court of appeals' judgment as to the commission's compliance with *Noll,* but we reject Jackson's claim for relief under *Gay.*

## *Noll* Compliance

If the commission fails to cite evidence of record showing that a claimant's permanent medical impairment is only partial, *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936, or to adequately explain how the claimant's nonmedical characteristics, including age, education, experience, etc., combine with the impairment to permit sustained remunerative employment, *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946; *Noll, supra,* its order denying PTD is an abuse of discretion, and a writ of mandamus must issue to correct the abuse. *Gay, supra; State ex rel. Pass v. C.S.T. Extraction Co.* (1996), 74 Ohio St.3d 373, 658 N.E.2d 1055. But the commission is also the exclusive evaluator of evidentiary weight and disability. Thus, when some evidence for the commission's decision exists, the decision must be upheld even if contradicted by other evidence a reviewing court considers more persuasive. *Id.* at 376, 658 N.E.2d at 1058.

The court of appeals correctly found some evidence for the commission's finding that Jackson was only partially impaired due to his allowed conditions and still physically able to work with restrictions.[1] While Jackson relies on his physician's and vocational expert's reports, Dr. Jerry McCloud reported in June 1993 that Jackson was permanently but not totally impaired based on his two allowed conditions and able to work with restrictions:

---

1. The parties do not mention it, but the commission's order identifies only the first of Jackson's two allowed conditions, which suggests that it did not consider the second. To deny PTD without considering all relevant allowed conditions is an abuse of discretion for which mandamus is the remedy. *State ex rel. Johnson v. Indus. Comm.* (1988), 40 Ohio St.3d 339, 533 N.E.2d 720. Here, however, the commission relied on reports from Drs. Kaffen and McCloud, both of whom took into account Jackson's two injuries. This reliance tends to confirm the commission's appreciation of both claims. Thus, in *State ex rel. Zollner v. Indus. Comm.* (1993), 66 Ohio St.3d 276, 611 N.E.2d 830, we preserved a commission order with the same defect.

"It is my opinion that the medical evidence would indicate that the claimant is capable of work activities. He is not capable of his 1990 employment. The changes are permanent and he has reached a level of maximum medical improvement and in [the second claim] demonstrates a permanent partial impairment of 45% related to the loss of active lumbar and cervical reserve and those changes in his left shoulder. This estimation is compatible with recommendations made in the Third Edition of the AMA Guidelines on Physical Impairment. There is 0% impairment in [the first claim]. Future requests for ongoing conservative treatment or other forms of conservative measures should not be approved as they will not be of lasting benefit to the claimant. He does have soft tissue injuries which are approaching three years of age and these will not respond in a positive fashion to ongoing or persistent conservative treatments nor significantly alter his future clinical prospects."

With respect to the commission's explanation of how Jackson's nonmedical characteristics did not foreclose employment, the court of appeals' referee found:

"[T]he commission stated that it considered claimant's age of fifty-seven, G.E.D., and work experience as a construction laborer and concluded that those factors, particularly the G.E.D., combined with the physical ability to perform some work within certain restrictions, do not prevent relator from performing sustained remunerative employment. The commission's explanation, although brief, suggests that the commission considered relator's age and education to be assets to reemployment, thereby providing adequate reasoning for the decision. See State ex rel. Murray v. Mosler Safe Co. (1993), 67 Ohio St.3d 330 [617 N.E.2d 1118]."

Adopting this finding, the court of appeals stated:

"Although the commission's explanation of its reasoning is indeed brief, it is clear that the commission considered relator's 'relatively high level of education' as a dispositive factor in determining relator's employability within the restrictions listed by Dr[.] McCloud * * *. While a more detailed explanation of the commission's reasoning would be preferable, we are not prepared to say that the explanation is too brief to meet the requirements of Noll, supra. Moreover, this court is not at liberty to substitute its judgment for that of the commission simply because it may disagree on the impact of relator's nonmedical disability factors. State ex rel. Ellis v. McGraw Edison Co. (1993), 66 Ohio St.3d 92 [609 N.E.2d 164]. Accordingly, relator's objection is overruled."

Jackson complains that the commission merely reported his age and work history without meaningful discussion. He cites State ex rel. Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452, 458, 619 N.E.2d 1018, 1022, which recognized that "[s]pecific recitation [of nonmedical factors], without more, is only slightly better than that the old boilerplate language assailed in Noll." Absent the

requisite explanation, "[t]hese factors are susceptible [of] both positive or negative interpretations depending on the reviewer, and, therefore, mere recitation gives no insight into the commission's reasoning." *Id. Waddle* thus directed the commission to specify in its orders whether nonmedical factors were considered an asset or detriment to employment and warned that noncomplying orders would result in a writ requiring an adequate explanation. Thus, in *State ex rel. Pierce v. Indus. Comm.* (1997), 77 Ohio St.3d 275, 277, 673 N.E.2d 1304, 1306, we rejected as insufficient a commission order denying PTD because it (1) merely acknowledged a claimant's age (sixty-two) and education (tenth grade with G.E.D.) and (2) failed to specify what marketable skills a former ironworker had or could develop to obtain sedentary employment.

The commission does not defend its silence on the marketability of any skills or abilities generated by Jackson's prior work experience, but it insists that it treated Jackson's age as an employment asset and observed that he had "last worked less than [three] years ago." The commission may have inferred from Jackson's recent employment that age was not an appreciable barrier for him in the job market, but this is pure speculation. *Waddle* disapproved of orders requiring such conjecture, admonishing the commission to "say so" if it views one or more nonmedical factors as employment assets. *Id.,* 67 Ohio St.3d at 458, 619 N.E.2d at 1022.

The court of appeals concluded that the commission considered Jackson's G.E.D. dispositive on the issue of his ability to be rehired. *Waddle* and *Pierce,* however, hold that the commission must do more—it must also specify the extent to which age and employment history may impede or promote a claimant's reemployment prospects. Thus, contrary to the court of appeals' judgment, the commission's order in this case is too cursory to withstand scrutiny under *Noll, supra. State ex rel. Bruner v. Indus. Comm.* (1997), 77 Ohio St.3d 243, 245, 673 N.E.2d 1278, 1280 (mandamus issued to require the commission to adequately explain how claimant's experience in window washing and maintenance promoted reemployment in sedentary or light duty job).

Jackson also complains that the commission did not properly credit the report of his vocational expert, citing *State ex rel. Hopkins v. Indus. Comm.* (1994), 70 Ohio St.3d 36, 635 N.E.2d 1257. Jackson argues, and rightly so, that *Hopkins* holds that the commission abuses its discretion by disregarding, as it did here, the only vocational report in the record. *Id.* at 40, 635 N.E.2d at 1260.

*Hopkins,* however, is contrary to established authority that the commission, as the exclusive evaluator of disability, is not bound to accept vocational evidence, even if uncontradicted. Rather, upon a determination of claimant's permanent partial impairment, the commission's charge is to review the evidence of the claimant's age, education, work history, and other relevant nonmedical character-

istics and to decide for itself from that evidence whether the claimant is realistically foreclosed from sustained remunerative employment. The commission may credit offered vocational evidence, but expert opinion is not critical or even necessary, because the commission *is* the expert on this issue. Thus, in *State ex rel. Singleton v. Indus. Comm.* (1994), 71 Ohio St.3d 117, 118, 642 N.E.2d 359, 361, another case in which the commission rejected the sole vocational report in the record, we explained:

"Claimant's challenge rests on the erroneous belief that the commission was bound by [the vocational expert's assessment of claimant's claim for permanent and total disability]. Part of the commission's authority to weigh and evaluate evidence, however, is the freedom to reject it as unpersuasive. Particularly as to vocational assessments, '[t]o bind the commission to a rehabilitation report's conclusion makes the rehabilitation division, not the commission, the ultimate evaluator of disability, contrary to [*Stephenson, supra* ].' *State ex rel. Ellis v. McGraw Edison Co.* (1993), 66 Ohio St.3d 92, 94, 609 N.E.2d 164, 166."

*Singleton,* being the more recent and consistent statement of the law, requires the conclusion that the commission had authority to reject Jackson's vocational expert's report. Thus, we concur in the court of appeals' finding that the commission permissibly rejected Jackson's vocational evidence.

## *Gay* Relief

*State ex rel. Gay v. Mihm, supra,* permits a reviewing court to award PTD where the commission has failed to comply with the specificity requirements of *Noll, supra,* and the record shows that a commission decision denying PTD would necessarily be an abuse of discretion. *Pass, supra,* 74 Ohio St.3d at 376, 658 N.E.2d at 1058. However, if the record is insufficient or the claimant's nonmedical factors are split between favorable and unfavorable considerations, reviewing courts should order the commission to comply with *Noll* regardless of whether the commission ultimately grants or denies PTD. *State ex rel. Ranomer v. Indus. Comm.* (1994), 71 Ohio St.3d 134, 137, 642 N.E.2d 373, 376.

For the reasons already discussed, Jackson has failed to establish his eligibility for *Gay* relief. While the commission did not specify how Jackson's age and employment history combined with his medical condition and restrictions and his education to make him employable, it did assess his education level to be a marketable asset. As at least one nonmedical factor suggests Jackson's capacity for employment, this record does not compel the conclusion that Jackson is inevitably permanently and totally disabled.

Having found that the commission did not comply with *Noll,* but that Jackson is not entitled to relief under *Gay,* we reverse the court of appeals' judgment and

grant a limited writ ordering the commission to review Jackson's application further and issue an amended order.

*Judgment reversed*
*and limited writ granted.*

MOYER, C.J., RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS, J., concurs in judgment only.

COOK and LUNDBERG STRATTON, JJ., dissent.

LUNDBERG STRATTON, J., dissenting. The appropriate standard for this court's review is to determine whether there is "some evidence" in the record to support the stated basis for the commission's decision. *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936. Because the record below contains "some evidence" in support of the commission's decision, I would affirm the court of appeals.

COOK, J., concurs in the foregoing dissenting opinion.