DECISION
{¶ 1} Relator, Ramona Shandrow, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying her application for permanent total disability compensation, and to enter a new order granting said compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that relator had failed to establish that the commission had abused its discretion and that this court should deny the requested writ.
 {¶ 3} Relator filed objections to the decision of the magistrate arguing that the magistrate had misconstrued the record factually. However, the errors claimed are not conclusions by the magistrate, rather they are part of an extended quotation from the staff hearing officer's order following a February 9, 2002 hearing. Other objections raised by relator are adequately addressed in the decision of the magistrate and, for the reasons stated in his decision, are overruled.
 {¶ 4} Following independent review pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, the requested writ is denied.
Objections overruled; writ of mandamus denied.
BRYANT and TYACK, JJ., concur.
 IN MANDAMUS {¶ 5} In this original action, relator, Ramona Shandrow, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 6} 1. On March 22, 1972, relator sustained an industrial injury which is allowed for "[l]ow back sprain with pain radiating to upper back/legs," "lumbar osteoarthritis and degeneration/protrusion of lower lumbar intervertebral disc," and is assigned claim number 498819-22.
 {¶ 7} 2. On June 24, 1999, relator filed a PTD application.
 {¶ 8} 3. On November 2, 1999, relator was examined by commission specialist and orthopedist Boyd W. Bowden, D.O. Dr. Bowden reported: "The claimant can perform sustained remunerative work, i.e. sedentary, sitting at a desk using fine motor skills with both hands."
 {¶ 9} 4. Dr. Bowden also completed an occupational activity assessment report. Dr. Bowden indicated that sitting is "unrestricted." Relator can lift or carry up to ten pounds for "0-3 HRS." Dr. Bowden restricted overhead and waist level "reaching" to "occasionally" as opposed to "frequently."
 {¶ 10} 5. The commission requested an employability assessment report from Jeffrey R. Berman who issued his report on December 17, 1999.
 {¶ 11} 6. In support of her PTD application, relator submitted a vocational report from Beal D. Lowe, Ph.D., dated January 11, 2000.
 {¶ 12} 7. Following a February 9, 2002 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The order states:
 {¶ 13} "The claimant was examined on behalf of the Industrial Commission on 11/02/1999 by Dr. Bowden, an orthopedic specialist. Dr. Bowden took a thorough history from the claimant and conducted a physical examination. Dr. Bowden concluded that the majority of the claimant's symptomatology in her lower extremities was due to her circulatory problems, with limitations due to extreme varicosities, loss of a pulse in her feet, and stasis dermatitis, thus causing the numbness in both feet which claimant had complained of. Dr. Bowden did find a five percent whole person permanent partial impairment. It was his opinion that the claimant could not return to her former position of employment as a packer, but that she retained the physical capacity to perform sedentary work, sitting at a desk using fine motor skills with both hands. The Occupational Assessment form filled out by Dr. Bowden shows him as estimating that claimant would have no restrictions on her ability to sit, and that she could stand or walk for 0 to 3 hours during the work day. The claimant's ability to lift and carry was significantly limited, but Dr. Bowden noted that the claimant's inability to use foot controls was due to her circulation problems and not due to her back condition.
 {¶ 14} "Vocationally, this claimant was age 49 when she last worked in 1972, and she is currently age 76. She reports finishing the 8th grade in school and that she can read and write. As a work history, the claimant has performed factory labor, she was a manager at a dry cleaners for two years, she did laundry work sorting clothes for approximately two years, and she worked for the employer herein as a packer for approximately seven years. There has been no contact with Rehabilitation Division. Evaluations were considered in conjunction with claimant's prior permanent and total disability applications, but at that time she had been found to have less than a 25% impairment, and she therefore did not meet the Rehabilitation guidelines for the provision of services or an evaluation.
 {¶ 15} "The claimant's current age of 76 is, of course, a significant impediment to reemployment. However, this is not an absolute bar, and it is relevant to note that the claimant was only age 49 when she last worked, and that no rehabilitation services have been sought. Claimant's education, while limited to completing the 8th grade, has not prevented her from a steady work history in the past. The claimant does in fact have work experience in a laundry setting and as a manager at a dry cleaners. There is also some indication that the claimant has worked as a seamstress and as a cake decorator.
 {¶ 16} "Overall, and considering only the allowed low back conditions in the claim, it is found that claimant would maintain the potential to adapt to types of sustained remunerative employment within the unskilled and sedentary range. The claimant has not worked for almost 28 years at this point, but this situation is clearly not due solely to the conditions allowed in this claim.
 {¶ 17} "In summary, it is found that claimant maintains the physical capacity to perform sedentary work, within the range of restrictions cited by Dr. Bowden. Vocationally, it is found that claimant does maintain the potential to adapt to types of sustained remunerative employment within her claim related restrictions, if she was so inclined and motivated. The evidence does not establish that the claimant is permanently and totally unable to do any type of work due to the conditions allowed in this claim, and the request for permanent and total disability compensation must therefore be denied."
 {¶ 18} 8. On March 26, 2002, relator, Ramona Shandrow, filed this mandamus action.
Conclusions of Law:
 {¶ 19} Two issues are presented: (1) whether the reports of Dr. Bowden are some evidence that relator has the medical ability to perform sedentary work, and (2) whether the commission abused its discretion in its nonmedical analysis by failing to rely upon a vocational report of record.
 {¶ 20} The magistrate finds: (1) Dr. Bowden's reports do constitute some evidence that relator has the medical ability to perform sedentary work, and (2) the commission did not abuse its discretion in its nonmedical analysis in failing to rely upon a vocational report of record. Accordingly, as more fully explained below, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 {¶ 21} Turning to the first issue, Ohio Adm. Code 4121-3-34(B)(2)(a) states:
 {¶ 22} "`Sedentary work' means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."
 {¶ 23} According to relator, Dr. Bowden's "reaching" restriction prohibits sedentary employment because she can only reach "occasionally" overhead and at waist level. Dr. Bowden further indicates in his narrative report that relator can perform sedentary work by "sitting at a desk using fine motor skills with both hands." Relator seems to suggest that Dr. Bowden's "reaching" restriction precludes her from exerting even a negligible amount of force frequently under the definition. The magistrate disagrees.
 {¶ 24} Because the word "reaching" is not defined by the commission's rules, it must be given its ordinary meaning.
 {¶ 25} Webster's Third New International Dictionary (Unabridged 1966) defines the verb "reach" as meaning "to stretch out: extend" or "to put forth." Webster's presents "reached out his hand to her" as an example of usage.
 {¶ 26} It is clear from the above definition of "reach" that "reaching" is not synonomous with exerting force. Thus, a prohibition or restriction against frequent overhead or waist level reaching is not necessarily a prohibition against exerting a negligible amount of force frequently. Accordingly, the magistrate must conclude that Dr. Bowden's restriction on frequent reaching overhead and at waist level is not tantamount to a restriction on exertion of a negligible amount of force frequently.
 {¶ 27} In fact, Dr. Bowden's narrative opinion that relator can sit at a desk "using fine motor skills with both hands," strongly suggests an ability to, at least, exert a negligible amount of force frequently.
 {¶ 28} In short, Dr. Bowden's reports are some evidence that relator is medically able to perform at some sedentary types of work.
 {¶ 29} The second issue is easily answered. As relator correctly points out, the commission's nonmedical analysis does not indicate reliance upon either of the two vocational reports of record. In fact, the commission's order indicates that the commission did its own nonmedical analysis absent reliance upon its own employability assessment report or relator's vocational report. This was entirely within the commission's discretion.
 {¶ 30} The commission is the expert on the nonmedical factors. Thus, the commission need not rely on the opinions of vocational experts in rendering its nonmedical analysis. State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266, 271.
 {¶ 31} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.